IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01301-CMA-STV

ALLISON BROWN,

    Plaintiff,

v.

CHAFFEE COUNTY,
CHAFFEE COUNTY BOARD OF REVIEW,
JON ROORDA, *Planning Manager, Chaffee County Planning and Zoning*,
DAN SWALLOW, *Director of Development Services, Chaffee County*, and
CHAFFEE COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendants.

---

# ORDER ADOPTING DECEMBER 19, 2019 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the December 19, 2019 Recommendation of United States Magistrate Judge ("the Recommendation") (Doc. # 55), wherein Magistrate Judge Scott T. Varholak recommends that this Court grant in part and deny in part Defendants' Motion to Dismiss Amended Complaint ("the Motion") (Doc. # 30). Defendant Chaffee County Board of County Commissioners ("BOCC") timely objected only as to Magistrate Judge Varholak's recommendation that Defendants' Motion be denied as to Plaintiff's due process claim against Defendant BOCC. (Doc. # 56 at 1.) For the reasons described herein, Defendant BOCC's objection is overruled. The Court affirms and adopts the Recommendation.

## I. BACKGROUND

The Magistrate Judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The Court therefore recounts only the facts necessary to address Defendant BOCC's objection.

On May 6, 2014, Allison Brown ("Plaintiff") purchased the property located at 11600 Antelope Road ("11600 Property") in Chaffee County, Colorado, in order to form a foxhunting club. (Doc. # 18 at ¶ 12.) From 2014 to 2016, Plaintiff operated a foxhunting club at the 11600 Property. (*Id*. at ¶ 11.) Plaintiff conducted hunts on public lands and private lands with the agreement of their owners from November 1, 2014, through March 31, 2015, and September 1, 2015, through March 31, 2016. (*Id*. at ¶ 13.) On August 8, 2016, Plaintiff submitted a residential permit application to the Chaffee County Building Department to construct an "accessory residential dwelling/guest house" at the 11600 Property. (*Id.* at ¶ 17.)

Part of the permit application process required a review by the Chaffee County Planning Department of the purpose and intended use of the requested improvements as well as the current and intended land use. (*Id.*) During this process, Plaintiff and Defendant Jon Roorda—in his capacity as the Planning Manager for Chaffee County Planning and Zoning—met and discussed Plaintiff's requested development, her current and intended land use, Chaffee County's ("the County") interpretation of its land use ordinances, and permitted uses of land under the Chaffee County Land Use Code ("CCLUC"). (*Id*. at ¶¶ 5, 17.) In response to Mr. Roorda's request for a description of

current and planned use of the 11600 Property, Plaintiff submitted a letter to the County that identified the foxhounds and horses maintained on the property, Plaintiff's foxhunting activities and club, her registration with the Masters of Foxhounds Association, her future house, and an additional single-family dwelling intended to be rented to a caretaker for the ranch and foxhounds. (*Id*. at ¶ 18.)

On October 12, 2016, Mr. Roorda suggested, in writing, that the aggregate use of Plaintiff's property would qualify as an 'outfitting facility' under the CCLUC, which would require a limited impact review and approval before a building permit could be issued. (*Id*. at ¶ 19.) Plaintiff revised her plans to remove the guest quarters to avoid the 'outfitting facility' designation and confirmed this in writing to Mr. Roorda. (*Id*.) After written confirmation of this revision from Plaintiff, and without requiring a limited impact review, Mr. Roorda issued Plaintiff a building permit, "which permitted [Plaintiff's] planned development and determined [her] land use was compliant with the county's zoning ordinances," and a Certificate of Zoning Compliance, which "again identif[ied] [Plaintiff's] land use as compliant with the county's zoning ordinances." (*Id.* at ¶¶ 20–21.) In reliance on the County's representations, Plaintiff commenced construction at the 11600 Property. (*Id.* at ¶ 22.)

After approximately five months of construction, on March 28, 2017, Mr. Roorda submitted a letter to Plaintiff that substantially changed the County's position, identified Plaintiff's use of the property as unlawful, and required Plaintiff to submit applications for a limited impact review to obtain permission from the County to continue using the 11600 Property "as previously permitted." (*Id.* at ¶ 23.) On May 8, 2017, Mr. Roorda

submitted a second letter to Plaintiff demanding that Plaintiff submit a limited impact review to avoid the matter being referred to the County Attorney. (*Id.* at ¶ 24.) The Board of Adjustment for Appeal denied Plaintiff's appeal of the conclusion that her development qualified as an 'outfitting facility' and a 'kennel,'[1] thus requiring a limited impact review. (*Id.* at ¶ 25, 27–28.)

On December 19, 2017, Plaintiff sold her home in anticipation of moving onto the 11600 Property. (*Id.* at ¶ 38.) However, Plaintiff was repeatedly denied a certificate of occupancy for the 11600 Property on the basis of her purported land use violations.[2] On February 22, 2018, the Chaffee County Board of Review denied Plaintiff's appeal of the denial of the certificate of occupancy. (*Id.* at ¶ 49, 51.) The County issued a certificate of occupancy for the 11600 Property only after the issuance of an injunction by Magistrate Judge Amanda Hunter, which prevented Plaintiff from riding with foxhounds and friends

---

[1] At the time Plaintiff's building permit was approved, the CCLUC defined 'kennel' as "an establishment other than a pet shop or veterinary clinic or hospital in which dogs, cats, and other animals are boarded for compensation, or are bred or are raised for sale purposes" and expressly excluded dogs used as part of an agricultural activity from the definition. (*Id.* at ¶ 30.) On October 11, 2017, the Chaffee County Planning Commission changed the 'kennel' definition to "[a]ny lot, parcel, tract or structure in which more than seven dogs, six months old or older, are bred, or kept, raised, trained, housed, or boarded for longer than two weeks," expressly excluded pet shops and veterinary hospitals, and removed the agricultural activity exemption. (*Id.* at ¶ 36.)

[2] On December 20, 2017, a building inspection correction notice stated: "cannot give ok to occupy until land use violation is resolved." (*Id.* at ¶ 39.) On January 2, 2018, the final inspection correction notice stated: "Corrections completed. No occupancy until land use code violations are corrected." (*Id.* at ¶ 41.) On January 10, 2018, Plaintiff sent a letter to County Administrator Bob Christiansen concerning the denial of the certificate of occupancy. (*Id.* at ¶ 42.) Mr. Christiansen responded by denying the certificate of occupancy due to CCLUC violations. (*Id.* at ¶ 44.)

on public land except for her whips.³ (*Id.* at ¶ 66.)

On March 28, 2019, Plaintiff initiated the instant action in the Chaffee County District Court against Chaffee County, the Chaffee County Board of Review, the BOCC, and Mr. Roorda and Dan Swallow in their official capacities. (Doc. # 4.) On May 3, 2019, Defendants removed the matter to this Court. (Doc. # 1.) Plaintiff's Amended Complaint alleges that Defendants violated Plaintiff's rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment. *See generally* (Doc. # 18).

Defendants filed the instant Motion seeking to dismiss the Amended Complaint in its entirety on July 8, 2019 (Doc. # 30), which this Court referred to Magistrate Judge Varholak (Doc. # 31). Magistrate Judge Varholak concluded that Defendants' Motion should be granted as to all claims except Plaintiff's due process claim against Defendant BOCC. Defendant BOCC filed the instant Objection to One Part of Magistrate Judge's Recommendation ("the Objection") on January 6, 2020 (Doc. # 56), to which Plaintiff responded on January 21, 2020 (Doc. # 58). Plaintiff did not object to the Recommendation.

## II. LEGAL STANDARDS

### A. REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter,

---

³ On August 17, 2017, the County filed a complaint against Plaintiff for declaratory judgment and injunctive relief. (*Id.* at ¶ 29.) On December 12, 2017, the County filed a motion for preliminary injunction. (*Id*. at ¶ 37.) On May 9, 2018, Magistrate Judge Hunter granted the motion, thereby enjoining Plaintiff from "using any improved structures or facilities at [the 11600 Property] to provide service, housing, or safekeeping to any animal or equipment that is used in conjunction with guiding services, specifically such guiding services that involve [Plaintiff's] riding out or hunting with foxhounds on public lands with any other individuals who are not affecting substantial control over the foxhounds." (*Id*. at ¶ 63; Doc. # 30-1 at 7.)

Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).[4]

## B.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to

---

[4] The Recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the Recommendation. (Doc. # 55 at 21–22.) Despite this advisement, neither party has objected to Magistrate Judge Varholak's Recommendation to the extent that it concludes that the Motion should be granted as to all claims against Chaffee County, the Chaffee County Board of Review, and Defendants Jon Roorda and Dan Swallow in their official capacities; that such claims against those Defendants should be dismissed with prejudice; that the Motion should also be granted as to the equal protection claim against Defendant Chaffee County Board of County Commissioners; and that the equal protection claim should be dismissed without prejudice. (Doc. # 55 at 21.) After reviewing the Recommendation with respect to those findings, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court affirms and adopts the Recommendation's findings and conclusions regarding each of the aforementioned claims.

dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [the] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they

plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

**C.     DUE PROCESS – PROPERTY INTEREST**

"Property rights we recognize under the Fourteenth Amendment 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs of Cty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The "identification of those benefits and the 'legitimate claim of entitlement' to them is determined not by the Constitution, but largely by state law." *Eason v. Bd. of Cnty. Comm'rs*, 70 P.3d 600, 604–05 (Colo. App. 2003) (citing *Hillside Cmty. Church v. Olson*, 58 P.3d 1021, 1025 (Colo. 2002)). To state a claim for the deprivation of property without due process, a plaintiff must allege facts plausibly suggesting (1) the defendant deprived it of a protected property interest, and (2) such deprivation was arbitrary. *Jordan-Arapahoe*, 633 F.3d at 1025 (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)).

Under Colorado law, a property owner does not obtain a vested property right in a particular land use absent (1) the approval of a site-specific development plan, or (2) the landowner's substantial and detrimental reliance on representations and affirmative actions by the local government. *Jordan-Arapahoe*, 633 F.3d at 1024. Most commonly, in Colorado, "property rights vest in a particular land use after a building permit has

8

been issued and the landowner acts in reliance on it." *Id.* at 1029. "A city permit can provide the foundation for a vested right, and thus be constitutionally protected from impairment by subsequent legislation, if the permit holder takes steps in reliance upon the permit." *P–W Investments, Inc. v. City of Westminster,* 655 P.2d 1365, 1371 (Colo. 1982). The general rule "provides that a common law right to develop does not vest until the party has taken substantial steps in reliance on a building permit." *Villa at Greeley, Inc. v. Hopper,* 917 P.2d 350, 356 (Colo. App. 1996); *see also Cline v. City of Boulder,* 450 P.2d 335, 338 (Colo. 1969) (reiterating the rule that a building permit by itself, without reliance, is not enough to create a vested property right). Thus, "generally speaking, no preliminary proceedings to the obtaining of a [building] permit give rise to any vested right to pursue a use in a zoned district." *City of Aspen v. Marshall*, 912 P.2d 56, 60–61 (Colo. 1996).

### III. <u>ANALYSIS</u>

Magistrate Judge Varholak recommended that Plaintiff's claim for deprivation of property without due process not be dismissed. Defendant BOCC's only objection to the Recommendation is to Magistrate Judge Varholak's conclusion that Plaintiff has sufficiently alleged that she had a protected property interest in her intended use of the 11600 Property.[5]

Under Colorado law, "property rights vest in a particular land use after a building permit has been issued and the landowner acts in reliance on it." *Jordan-Arapahoe*, 633

---

[5] Defendant does not appear to contest in its Motion that its conduct with respect to Plaintiff was arbitrary.

9

F.3d at 1029; see also P–W Investments, 655 P.2d at 1371 ("A city permit can provide the foundation for a vested right, and thus be constitutionally protected from impairment by subsequent legislation, if the permit holder takes steps in reliance upon the permit.") Plaintiff alleges that the County represented that her current and intended land use was permissible under the CCLUC, that the County issued her a building permit for the property that permitted said land use, and that she detrimentally relied on the County's issuance of the building permit. Presuming all of Plaintiff's factual allegations are true and construing them in the light most favorable to her, Hall, 935 F.2d at 1109, this is sufficient to plausibly plead a protected interest in her intended land use at the motion to dismiss stage.[6]

The Colorado Court of Appeals decision in Eason, 70 P.3d 600, adopted by the Tenth Circuit in Jordan-Arapahoe, 633 F.3d 1022,[7] supports the Court's conclusion. In Eason, the defendant county's land use department sent the plaintiff a letter stating that, "under its interpretation of the zoning ordinance," the plaintiff's proposed use of his

---

[6] Defendant argues that "[Plaintiff's] application for a residential structure building permit, including her certification of zoning compliance, could not create a vested right to avoid seeking a permit to operate a kennel and outfitting facility." (Doc. # 30 at 12.) Defendant misstates Plaintiff's argument. Plaintiff argues not that her application for either document created the vested right, but that Defendant's actions in issuing those documents, and her subsequent reliance upon those actions, created the vested right.

[7] The issuance of a building permit in the instant case fundamentally differentiates Plaintiff from the plaintiff in Jordan-Arapahoe. The plaintiff in Jordan-Arapahoe failed to state a due process claim because it detrimentally relied on city actions and representations that fell short of the issuance of a building permit. Id. at 1029–30 (citing City of Aspen v. Marshall, 912 P.2d 56, 60–61 (Colo. 1996) ("generally speaking, no preliminary proceedings to the obtaining of a [building] permit give rise to any vested right to pursue a use in a zoned district. Thus, no vested right to a particular use in a zoned district is acquired by approval of [a] plan for it."))

property was permitted. 70 P.3d at 606. The plaintiff relied on the county's representations to his detriment, and the county subsequently changed the zoning and ordered him to cease his current use of the property. *Id.* The *Eason* court determined that, under Colorado law, the letter interpreting the zoning ordinance in the plaintiff's favor and the plaintiff's detrimental reliance on that letter created a protected property interest in his current use of the property within the meaning of the Due Process Clause. *Id.* at 606. Likewise, in the instant case, the County's representation to Plaintiff that her land use complied with zoning requirements, including its issuance of a building permit, and Plaintiff's detrimental reliance on those representations created a protected interest in her intended use of the 11600 Property.[8]

The remainder of Defendant's arguments dispute the facts alleged by Plaintiff and, as such, need not be addressed at the motion to dismiss stage.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- The December 19, 2019 Recommendation of United States Magistrate Judge (Doc. # 55) is AFFIRMED and ADOPTED as an Order of this Court;

- Defendants' Motion to Dismiss Amended Complaint (Doc. # 30) is GRANTED to the extent it seeks dismissal of all claims against Defendants Chaffee County, the Chaffee County Board of Review, and Jon Roorda and Dan

---

[8] The two additional cases Defendant cites in its Objection are inapposite to the instant case. *See Milcor I, LLC v. Luers*, 764 F. App'x 747 (10th Cir. 2019) (applied Wyoming law); *see also Patzer v. City of Loveland*, 80 P.3d 903 (Colo. App. 2003) (did not involve due process analysis).

Swallow in their official capacities. All claims against those Defendants are DISMISSED WITH PREJUDICE;

- Defendants' Motion (Doc. # 30) is GRANTED to the extent it seeks dismissal of the equal protection claim against Defendant Chaffee County Board of County Commissioners. The equal protection claim against Defendant Chaffee County Board of County Commissioners is DISMISSED WITHOUT PREJUDICE; and

- Defendants' Motion (Doc. # 30) is DENIED to the extent it seeks dismissal of the due process claim against Defendant Chaffee County Board of County Commissioners.

DATED: March 2, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge