IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:19-cv-01301-RMR-STV

ALISON BROWN,

    Plaintiff,

v.

CHAFFEE COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendant.

---

## ORDER

---

Pending before the Court is Defendant Chaffee County Board of County Commissioners' Motion for Summary Judgment, ECF No. 110. For the reasons stated below, the Court GRANTS the motion.

### I.    BACKGROUND

Plaintiff Dr. Alison Brown purchased property located at 11600 Antelope Road in Chaffee County, Colorado. With the intention of keeping horses and foxhounds for foxhunting on her private land and the surrounding public lands, she formed her foxhunting club, Headwaters Hounds LLC, and registered it with the Masters of Foxhounds Association on October 1, 2014. Plaintiff contends that Defendant Chaffe County Board of County Commissioners ("Chaffee County" or the "County") deprived her of her vested property interests in using her land as she intended. The Chaffee County Land Use Code ("LUC") requires that certain proposed land uses, including multi-family

dwellings, kennels, and outfitting facilities, undergo a "Limited Impact Review" in order for the County to approve those uses.

First, Brown takes the position that because she adjusted her plans to construct a building on her property so that the building would qualify as a single-family dwelling, rather than a multi-family dwelling, she had a vested property interest in conducting all of the other activities that she intended for the property without a Limited Impact Review, including activities that the County determined qualified as kennels and outfitting facilities. She argues that she was denied her property rights without due process when the County declined to issue a certificate of occupancy for the building once it was constructed, due to the other ongoing land use violations.  Second, Chaffee County changed its definition of "kennel" in November of 2017 so that kennels were not limited to operations that breed dogs, but encompass any operations that keep a certain number of dogs.  Brown argues that her intended land use did not qualify as a "kennel" under the previous definition because she never bred dogs, and she argues that the change in the definition violated her due process rights.  Third, Brown argues that the County's definition of "outfitting facilities" is overbroad such that it violates her due process rights.

However, for the reasons stated below, Brown has not established that she had a vested property interest in the right to conduct her intended activities on her land without undergoing the necessary Limited Impact Review.  Brown argues that the County made certain representations to her regarding her land use that established her vested property rights in those uses; however, she has failed to set forth facts establishing that the County made the representations she contends.  On the other hand, Defendant's arguments and

2

citations to the record establish that the County clearly represented to Plaintiff throughout the course of their communications that she did not have the right to use the land in the way she intended without a Limited Impact Review. Because Plaintiff cannot establish that she possessed the vested property rights that underlie her Fourteenth Amendment due process claim, the Court need not address whether she was denied due process with respect to any such vested property interests.

### A. Factual Background[1]

On August 8, 2016, Brown submitted a residential building permit application to the County with the intention of building a structure that would serve as an office and guest quarters on her Antelope Road property. Jon Roorda, Chaffee County Planning Manager, met with Brown on August 15 and explained that her proposed structure would qualify as a multi-family dwelling, rather than a single-family dwelling, and would require a Limited Impact Review under the LUC. *See* ECF No. 110-1 at 7–9.[2] Brown then revised her building plans so that the proposed structure would qualify as a single-family dwelling and would not have to undergo a Limited Impact Review. She resubmitted the plans to Chaffee County.

During their discussions about Brown's original proposed building plans, Roorda called Brown on August 19, 2016, and they discussed the issue of whether Brown's other intended land use qualified as an "outfitting facility." *Id.* at 87. Under Table 2.2 in Article

---

[1] Unless otherwise noted, the facts stated in this section are undisputed.

[2] Where the Court cites to documents filed in the Court's Electronic Case Filing ("ECF") system, it cites to the page number of the ECF filing stamp, rather than the page number of the underlying document.

2 of the LUC, outfitting facilities and kennels also require a Limited Impact Review in order for the land use to be approved.  *Id.* at 7–9.

On September 28, 2016, Brown forwarded to Roorda an email string between her and the United States Forest Service reflecting that the Forest Service would not treat her activities associated with her Headwaters Hounds LLC foxhunting club, which she partially conducted on Forest Service land, as falling under the category of "Outfitting and Guiding."  On October 12, 2016, Roorda emailed Brown, stating:

> We have reviewed your revised office/guest quarters plans, site plans and communication with USFS.
>
> Although USFS does not classify your use as outfitting, the aggregate use of your property does fall under the Land Use Code as an outfitting facility.
>
> As such, the LUC does require a Limited Impact Review for the use.
>
> This would encompass the kennels, stables and the office/guest quarters instead of the Limited Impact Review that is required for either a minor motel or a resort.
>
> The application form is on our website under the Planning and Zoning Department and includes references to the applicable sections of the code.[3]

*Id.* at 97.

On October 24, 2016, Roorda, having received Brown's revised plan for a single-family dwelling, which does not require a Limited Impact Review, signed the Certificate of Zoning Compliance on Brown's building permit application.  Plaintiff argues that this

---

[3] Brown "disputes" that the Defendant's quotation of this email "represents the communication" that took place between Brown and Roorda.  ECF No. 123 at 6 ¶ 5.  However, Plaintiff cites to the "Oct. 12, 2016 Emails" included in Defendant's Appendix, ECF No. 110-1 at 97, which include the exact language quoted here and in Defendant's motion, ECF No. 110 at 9 ¶ 45.  Therefore, to the extent Plaintiff disputes that this "the quoted text represents the communication," the Court finds that any such dispute is not genuine.

4

signature constituted a representation that she could conduct her other activities on her land without a Limited Impact Review.  However, Plaintiff's position is not supported by the record.[4]  *See id.* at 37, 47–48.  On November 14, 2016, the Building Department issued the residential building permit.  According to Defendant, the permit only approved the proposed single-family dwelling, but Brown disputes this, stating that "the building permit approved both the structure and related land uses."  *Compare* ECF No. 110 at 11 ¶ 53, *with* ECF No. 123 at 6 ¶ 5 n.35.  Again, the Court does not find Plaintiff's dispute regarding the effect of the permit to be supported by the record.

On January 2, 2018, the Building Department completed a final re-inspection of the single-family dwelling and determined that all construction corrections had been completed, but denied a certificate of occupancy, noting that there should be "[n]o occupancy until Land Use Code violations are corrected."  ECF No. 110-1 at 119.  In particular, on March 28, 2017, Roorda had issued Brown a letter notifying her that she was operating an unpermitted kennel and outfitting facility in violation of the LUC and instructing her to apply for Limited Impact Review.  On May 8, 2017, Chaffee County had also issued a second letter informing her of this.  On February 14, 2018, Chaffee County issued a Notice of Violation expressly informing Brown that she was in violation of the kennel definition, which had been amended in November of 2017, and ordering her to cease and desist from housing more than seven dogs on the parcel.

---

[4] Defendant states that the signature on the Certificate of Zoning Compliance only constituted a "zoning signoff" on the building permit application.  In the section of the building permit application labeled "Use compliance or Special Use Permit," Roorda underlined "Use" and checked "Yes" because he interpreted the proposed "Accessory Residential Dwelling/Guest House" as a "single family dwelling," which did not require a Limited Impact Review.  ECF No. 110-1 at 37, 47–48.

Plaintiff's and Defendant's briefings discuss further factual background regarding the County's November 2017 amendment to the LUC's definition of "kennel"; whether Plaintiff's activities involving foxhounds fell under the prior or amended definition of "kennel"; and whether Plaintiff's land use constituted an "outfitting facility" under the LUC. However, the Court need not address these issues because Plaintiff cannot establish a vested property interest in her aggregate intended land use. Therefore, her arguments that the County violated her due process rights by determining that these uses would require a Limited Impact Review as a "kennel" or "outfitting facility" necessarily fail.

B.   **Procedural History**

On March 28, 2019, Plaintiff filed the instant action in the Chaffee County District Court against five Defendants: Chaffee County; Chaffe County Board of Review; Jon Roorda, Planning Manager for Chaffee County Planning and Zoning; Dan Swallow, Director of Development Services for Chaffee County; and the Chaffee County Board of Commissioners. ECF No. 4 at 1. On May 3, 2019, Defendants removed the matter to this Court. ECF No. 1. On May 28, 2019, Plaintiff amended her complaint, and that First Amended Complaint is the operative pleading in this action. ECF No. 18. The Amended Complaint alleges that Defendants violated Plaintiff's rights guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment. *Id.* ¶¶ 69–83. On Mary 2, 2020, the previously presiding District Judge in this matter accepted and adopted the Recommendation of United States Magistrate Judge Scott T. Varholak and dismissed with prejudice all claims against Defendants Chaffee County, the Chaffee County Board of Review, Jon Roorda, and Dan Swallow. ECF No. 60 at 11–12; *see* ECF No. 55. The

previously presiding District Judge also accepted and adopted Magistrate Judge Varholak's recommendation to dismiss without prejudice the equal protection claim. ECF No. 60 at 12; *see* ECF No. 55. Therefore, the only remaining claim in this action is the due process claim against Defendant Chaffee County Board of County Commissioners.

On March 18, 2021, Defendant Chaffee County Board of County Commissioners filed its present Motion for Summary Judgment, ECF No. 110. The Court has permitted extensive briefing on the motion. After Plaintiff responded, ECF No. 123, and Defendant replied, ECF No. 128, the Court granted Plaintiff leave to file a surreply. *See* ECF Nos. 133–34, 136. On June 14, 2021, the Court also granted Defendant leave to file a reply to Plaintiff's surreply, *see* ECF Nos. 140–41, and granted Plaintiff leave to supplement the summary judgment record in support of her Response, ECF No. 123, to the motion, *see* ECF Nos. 142–44. On June 25, 2021, Defendant filed a Motion for Leave to File a Reply to Plaintiff's Supplement, ECF No. 145, to which Plaintiff filed a Response on June 29, 2021, ECF No. 146. This matter was reassigned to the undersigned on July 6, 2021, ECF No. 147. On July 12, 2021, Defendant filed a Reply, ECF No. 148, to Plaintiff's Response to Defendant's Motion for Leave to File a Reply to Plaintiff's Supplement. The Court granted Defendant's Motion for Leave to File a Reply to Plaintiff's Supplement. *See* ECF No. 155. Defendant filed the Reply at ECF No. 157. The Motion for Summary Judgment is now ripe for review.

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

7

of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material if under the substantive law it is essential to the proper disposition of the claim.'" *Wright ex rel. Tr. Co. of Kan. v. Abbot Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)); *see also Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material."). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson*, 477 U.S. at 248. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, "the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings" at this stage. *Adler*, 144 F.3d at 671. If the movant carries "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," then "the burden shifts to the nonmovant to go beyond the

pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 670–71.

Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

### III.   ANALYSIS

The extensive briefing that has taken place regarding this motion for summary judgment does not change the fact that this case turns on the question of whether Brown had a vested property right that is recognized by the Fourteenth Amendment.[5]  *See* ECF No. 110 at 1 ("The remaining claim in this lawsuit turns on Dr. Brown's contention that when Chaffee County granted her a residential building permit to construct a house, she simultaneously acquired a vested right to use her property to operate a kennel and outfitting facilities."); ECF No. 123 at 10 ¶ 10 ("All that remains is whether Dr. Brown established a vested property right."). Because the Court finds that Brown has not

---

[5] Plaintiff argues that Defendant misconstrues her claims as substantive due process claims, while they are in fact procedural due process claims, which do not require the same elements. ECF No. 123 at 8–9 (citing *Onyx Props. LLC v. Bd. of Cnty. Commissioners of Elbert Cnty.*, 838 F.3d 1039, 1043 (10th Cir. 2016); *Hyde Park Co.*, 226 F.3d at 1210)) ("[T]hese claims are distinct as '[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensure the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."). Regardless, as Plaintiff concedes, both claims require that Plaintiff had a valid property interest that is recognized under the Fourteenth Amendment. *See id.* at 10 ("All that remains is whether Dr. Brown established a vested property right.").

established a vested property right, it need not proceed to determine whether the County deprived her of any such right without due process of law.

Brown argues that she had six different property rights that were deprived without due process of law:

1. "representations of land use compliance in 2016," ECF No. 123 at 11 ¶ 11(i), 17 ¶ 17;
2. "the October 2016 zoning certification of land use compliance," *id.* at 11 ¶ 11(ii), 17 ¶ 17;
3. "the November 2016 building permit," *id.* at 11 ¶ 11(iii), 17 ¶ 17;
4. "the June 2017 zoning determination of the original kennel ordinance," *id.* at 11 ¶ 11(iv);
5. "land use" following the County's "enforcement of the amended kennel ordinance," *id.* at 11 ¶ 11(v); and
6. "land use" following the County's "enforcement of the outfitting ordinance," *id.* at 11 ¶ 11(vi).

The Court addresses these claimed property interests below.

### A. Applicable Law

"Property interests . . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Colorado Supreme Court has held that "a vested right must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand

10

made by another." *Ficarra v. Department of Regul. Agencies*, 849 P.2d 6, 16 (Colo. 1993) (internal quotation and citation omitted).  Further, a vested right is a "right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy." *Id.* (citation omitted).  In Colorado, a vested property right can arise under either common law or the Vested Property Rights Act ("VPRA"), *Jordan-Arapahoe, LLP v. Board of Cnty. Comm'rs*, 633 F.3d 1022, 1029 (10th Cir. 2011).  Brown does not dispute that the VPRA does not provide any rights that are applicable here.  *Compare* ECF No. 110 at 15, *with* ECF No. 123 at 16–17.

Under Colorado common law, "[m]ost commonly, property rights vest in a particular land use after a building permit has been issued and the landowner acts in reliance on it." *Jordan-Arapahoe*, 633 F.3d at 1029.  "[G]enerally speaking, no preliminary proceedings to the obtaining of a [building] permit give rise to any vested right to pursue a use in a zoned district.  Thus, no vested right to a particular use in a zone district is acquired by approval of [a] plan for it." *Id.*  "Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representations and affirmative actions by the government." *Id.* (quoting *Eason v. Board of Cnty. Comm'rs*, 70 P.3d 600 (Colo. App. 2003)).

11

### B. Whether Plaintiff Had a Vested Property Interest Based on "Representations" by the County

The Court first addresses whether Plaintiff had vested property rights from "representations of land use compliance in 2016," ECF No. 123 at 11 ¶ 11(i), and in Plaintiff's last three claimed property interests:

4. "the June 2017 zoning determination of the original kennel ordinance," *id.* at 11 ¶ 11(iv);

5. "land use" following the County's "enforcement of the amended kennel ordinance," *id.* at 11 ¶ 11(v); and

6. "land use" following the County's "enforcement of the outfitting ordinance," *id.* at 11 ¶ 11(vi).

The Court interprets Plaintiff's last three claimed property interests, *see id.* at 11 ¶ 11(iv)–(vi), in the context of her argument later in her Response brief that she is claiming a property interest in the County's "represent[ation] to [her] that her land use was compliant under the CCLUC; that it was classified as a Permitted use; and therefore, it was not classified as a kennel or outfitting facility, which are subject to Limited Impact Review." *Id.* at 16 ¶ 16; *see also id.* at 17 ¶ 17 (citing *Eason*, 70 P.3d at 605–06 (holding that "Colorado law recognizes a protected property interest in a zoning classification when a specifically permitted use becomes securely vested by the landowner's substantial actions taken in reliance, to his or her detriment, on representations and affirmative actions by the government")).

However, not only do "no preliminary proceedings to the obtaining of a [building] permit give rise to any vested right to pursue a use in a zoned district," *Jordan-Arapahoe*, 633 F.3d at 1029, but also, Roorda's "representations" to Plaintiff regarding her use of

12

her land consistently indicated that her aggregate use *would* require a Limited Impact Review. As stated, Roorda emailed Brown in October of 2016, before signing the Certificate of Zoning Compliance and before the building permit issued, specifying that:

> Although USFS does not classify your use as outfitting, the aggregate use of your property does fall under the Land Use Code as an outfitting facility.
>
> As such, the LUC does require a Limited Impact Review for the use.
>
> This would encompass the kennels, stables and the office/guest quarters instead of the Limited Impact Review that is required for either a minor motel or a resort.

ECF No. 110-1 at 97. This representation was consistent with the County's eventual denial of a certificate of occupancy for the building, based on Brown's ongoing violations of the LUC from her kennel- and outfitting-related land uses for which she did not undergo a Limited Impact Review. *See id.* at 97, 119. Hence, Plaintiff has not "set forth specific facts" from which the Court could find that there were any representations made to her (on which she detrimentally relied) that created a vested property interest in her ability to use the land in ways that constituted kennel or outfitting uses. *See Adler*, 144 F.3d at 670–71. Therefore, Plaintiff's claim that she was denied any such vested property rights without due process of law necessarily fails.

    **C.    Whether Plaintiff Had a Vested Property Interest Based on "the November 2016 Building Permit"**

Brown also argues that she "has a vested property right in the 2016 Building Permit" and appears to argue that because she informed Roorda of "her current and intended land use in relation to the structure and building permit . . . includ[ing] her [land uses involving] her foxhounds, horses, and foxhunting club, Headwaters Hounds LLC,

13

annual subscriptions, hunting events, [and] agricultural buildings on the property for the animals' care," the building permit and Certificate of Zoning Compliance conferred on her a vested property interest in those uses, and not just a property interest in building the structure proposed. ECF No. 123 at 5 ¶ 5, 17 ¶ 17, 18 ¶ 18. Defendant has established that this conclusion is not supported by Colorado or local law, and as stated, "[p]roperty interests . . . .  are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577.

Defendant states that the building permit "approved only the single family dwelling," and not the related uses that Brown intended. ECF No. 110 at 11 ¶ 53. Defendant also states that when Roorda checked "Yes" in the section of the building permit application labeled "Use compliance or Special Use Permit," this indicated that the proposed single family dwelling was a compliant use. *Id.* at 10 ¶ 51. Plaintiff "disputes that the permit approved *only* the Single Family Dwelling," stating that "[i]nstead, the building permit approved both the structure and related land uses." ECF No. 123 at 6 ¶ 5, 6 n.35. However, Defendant Chaffee County has borne the "initial burden" of showing that the applicable county laws, codes, and ordinances do not establish that the property rights Brown claims were, in fact, conferred through the granting of the building permit. *See Adler*, 144 F.3d at 670–71. Chaffee County had previously adopted the 2006 International Residential Code. ECF No. 110-1 at 53. That code states that:

14

> **The issuance or granting of a permit shall not be construed to be a permit for, or any approval of, any violation of the provisions of this code or of any other ordinance of the jurisdiction.**  Permits presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid.  The issuance of a permit based on construction documents and other data shall not prevent the building official from requiring the correction of errors in the construction documents and other data.  **The building official is authorized to prevent occupancy or use of a structure where in violation of this code or of any other ordinances in this jurisdiction.**

*Id.* at 64 (emphasis added).

Plaintiff's citations to the record do not reflect the interpretation of the residential building permit that she propounds.  She cites to the permit, itself, which specifies that it is a "*Residential* Permit Application."  *See id.* at 37–39 (emphasis added), *cited in* ECF No. 123 at 6 ¶ 5 nn.29, 35.  The permit does not reference any of the other types of land uses Plaintiff mentioned in her communications with Roorda.  Plaintiff also cites to her communications that she sent to Roorda describing her other intended uses, but these communications do not establish the applicable laws and rules of Chaffee County.  *See* ECF No. 123 at 6 ¶ 5 nn.29, 35 (citing ECF No. 110-1 at 88, 90–93).  Finally, she cites to the subsequent October 12, 2016 email, in which Roorda expressly informed her that her "aggregate use of [her] property does fall under the Land Use Code as an outfitting facility" and therefore requires a Limited Impact Review.  ECF No. 110-1 at 97.

Hence, Plaintiff has not borne the burden "to go beyond the pleadings and 'set forth specific facts' . . . from which a rational trier of fact could find" that the building permit and Certificate of Zoning Compliance conferred a vested property right in her aggregate intended use of her land.  *Adler*, 144 F.3d at 670–71.  Therefore, she has failed to establish a claim that she was denied any such vested property rights without due process

15

when the County eventually denied a certificate of occupancy in the building because her aggregate land use was not compliant with the LUC.

### D. Whether Plaintiff Had a Vested Property Interest Based on "the October 2016 Zoning Certification of Land Use Compliance"

On October 24, 2016, twelve days after emailing Brown to inform her that "the aggregate use of [her] property does fall under the Land Use Code as an outfitting facility," and therefore would need a Limited Impact Review for use, Roorda signed the Certificate of Zoning Compliance on Brown's building permit application. Brown appears to argue that, because she had previously provided to the County her plans for her aggregate use of the land, and despite the fact that Roorda had expressly emailed her to the contrary, the Certificate of Zoning Compliance permitted Brown to proceed with the aggregate use for her land involving kennels and outfitting. *See* ECF No. 123 at 11 ¶ 11(ii). However, as stated, "[p]roperty interests . . . . are created and their dimensions are defined by existing rules or understandings" stemming from state law. *Roth*, 408 U.S. at 577. Chaffee County has established that, under applicable state and local law, the Certificate of Zoning Compliance does not create the property rights that Brown believes it did.

The International Residential Code that Chaffee County had adopted provides that a certificate of occupancy is required before a building or structure may be occupied, but "[i]ssuance of certificate of occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction." ECF No. 110-1 at 66. The International Residential Code further provides that the building official "shall issue a certificate of occupancy" after "the building official inspects the building or

16

structure and finds no violations of the provisions of this code or other laws that are enforced by the department of building safety."[6]  *Id.*

Here, the County has borne its "initial burden" to show that there is no genuine dispute that the Certificate of Zoning Compliance did not confer on Brown any additional property rights than those that were conferred by the building permit, itself.  *See Adler*, 144 F.3d at 670–71.  In particular, Brown does not dispute Defendant's statement of fact that "Roorda's signature on the Certificate of Zoning Compliance was only the zoning signoff on the building permit application."  *Compare* ECF No. 110 at 10 ¶ 50, *with* ECF No. 123 at 6 ¶ 5; *see also* ECF No. 110-1 at 18 (Daniel Joseph Swallow, Chaffee County Director of Development Services, testifying that "[t]he purpose [of a certificate of zoning compliance] is to review the proposed structure that's -- for which the building -- the building permit application has been submitted, and ensure that it is in compliance with the code for the items that I just mentioned -- for instance, building height, street frontage, setbacks . . . .").  Hence, Brown has not "go[ne] beyond the pleadings and 'set forth specific facts'" indicating that the Certificate of Zoning Compliance conferred a vested a property interest in her uses of the land unrelated to the rights conferred by the building permit application, itself.  *See Adler*, 144 F.3d at 670–71.  As established above, the building permit application did not confer on Brown a vested property interest in her aggregate use of the property.  Therefore, Brown's argument that her reliance on the

---

[6] Although Brown appears to contend that this text of the code "mischaracterizes the law," ECF No. 123 at 5 ¶ 5, the Court finds that the text is a correct quotation of the pertinent section of the 2006 International Residential Code, provided by Defendant in its Appendix, ECF No. 110-1 at 66.  Plaintiff has not provided any citation to the record or some other source contradicting this text of the code.

Certificate of Zoning Compliance conferred a vested property interest in her aggregate use of the property fails, as well.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Chaffee County Board of County Commissioners' Motion for Summary Judgment, ECF No. 110. Accordingly, Plaintiff's remaining claim and this case are DISMISSED WITH PREJUDICE.

DATED:  June 23, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge